# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICKEY MASON,
#R04326,

        **Plaintiff,**

v.

HEATHER CECIL,
JOHN/JANE DOES 1, *Mail Room Staff,*
JOHHN/JANE DOES 2, *Internal Affairs Staff,*
ROBERT REID,
MARY WEAVER,
PLUCKETT,
N. PLUCKETT,
JOSHUA YOUNG,
JOHN DOE 1, *1st Shift Segregation,*
PIPER,
FITCH,
SHAY ALLEN,
K. ULRICH,
B. LOY,
JOHN DOE 2, *1st Shift Sergeant,*
L. LIVINGSTON,
DEE DEE BROOKHART,
CHRISTOHPER WALTZ,
RUSSELL L. GOINS,
JOHN DOE 3, *1st Shift Lieutenant,*[1]
DAN DOWNER,
AMY BURLE, and
ROB JEFFREYS,

        **Defendants.**

Case No. 19-cv-01375-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff Mickey Mason, an inmate of the Illinois Department of Corrections

---

[1] The Clerk is directed to add this defendant to the docket. (*See* Doc. 10, p. 1).

("IDOC") who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. He claims that he has be subjected to ongoing retaliation and harassment while at Lawrence. He seeks monetary damages and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**THE COMPLAINT**

In the Complaint, Mason alleges that after sending mail to IDOC Director Rob Jeffreys notifying him of legal mail interference at Lawrence on July 7, 2019, he has been continually subjected to harassment, retaliation, and continued inference with his mail. (Doc. 10, pp. 18, 21). His Complaint and exhibits contains the following allegations:[2]

*Legal Mail*

The mailroom staff, internal affairs staff, and Mailroom Supervisor Heather Cecil

---

[2]On December 17, 2019, Mason commenced this action by submitting an Electronic Filing Cover Sheet form along with several exhibits and grievances. He was ordered to file a complaint on or before January 24, 2020. (Doc. 4). A complaint was filed on January 17, 2020, (Doc. 10). The Clerk of Court will be directed to rename the pleading at Doc. 1 as follows: Exhibits to the Complaint (Doc. 10). Furthermore, because it appears that Mason is relying on statements made in the Complaint and the previously filed exhibits in asserting his claims, the Court is construing the allegations in these pleadings together. *See Otis v. Demarass,* 886 F.3d 639, 644 (7th Cir. 2018).

have repeatedly opened Mason's legal oriented mail without him being present, delayed mail, and destroyed outgoing mail. (Doc. 10, pp. 17-18, 22; Doc. 1, p. 11; Doc. 10-1, pp. 6, 19). Specifically, on June 28, 2019, Mason received mail from an appellate court that was opened not in his presence with the notation of legal mail scratched out on the manila envelope. (Doc. 10, p. 17; Doc. 1, p. 2). He did not accept the mail since it had been opened and taped without him being present and, as a result, missed the deadline to appeal the court's decision. (Doc. 10, p. 17). The appellate court sent Mason another copy of the decision entered in his appeal on July 10, 2019. (Doc. 10, p. 21; Doc. 1, p. 10).

On July 2, 2019, Mason received a letter marked "Confidential Legal Mail" from the Office of the State Appellate Defendant, that had appeared to be steamed opened, delayed, and read by mailroom staff and the internal affairs staff, giving him only nine days to file a petition for leave to appeal. (Doc. 10, p. 21).

Mason received legal mail from his attorney on July 26, 2019, August 2, 2019, October 6, 2019, and December 12, 2019, that had been opened not in his presence. (Doc. 10, pp. 25, 27, 32; Doc. 10-1, pp. 15, 27). One letter from his attorney mailed on September 27, 2019, he did not receive until October 6, 2019, and one letter sent by him to his attorney was delayed by nine days. (Doc. 10-1, pp. 15, 26).

On August 1, 2019, mailroom staff refused to send a letter to the NAACP, stating that the letter must be addressed to a specific attorney. (Doc. 10, p. 27). Legal mail to the Illinois State Police was also not sent and returned to him because the letter had been sealed (Doc. 10, p. 18; Doc. 10-1, p. 7), and legal documents concerning his criminal case that Mason attempted to mail to his private investigator were returned to him unsent because he used legal envelopes for non-legal mail. (Doc. 10-1, p. 10).

Mason did not receive two orders of family photos mailed to him, (Doc. 10-1, p. 12), and on December 15, 2019, he sent mail to his family, did not receive a payment receipt, and his family did not receive the mail. (Doc. 10-1, p. 27).

Finally, Mason mailed a civil complaint on December 17, 2019, concerning this case, but it was not received by this Court. (Doc. 10-1, p. 27).

**Retaliation and Harassment**

Mason has been subjected to various forms of retaliation and harassment by staff members at Lawrence. On July 22, 2019, Sergeant Robert Reid tore off the posted date from a letter marked legal mail from Mason's attorney, so Mason could not see if the letter had been delayed. (Doc. 10, p. 23). Later that day, Reid shook down his cell and took his legal documents concerning his criminal case, along with personal photos. (Doc. 10, 23; Doc. 1, pp. 28-29). Reid gave Mason a falsified shake down slip stating that contraband was found in Mason's property box and issued a false disciplinary ticket. (Doc. 10, pp. 23-24; Doc. 1, p. 28). Adjustment Committee Member N. Pluckett falsely reported that Mason pled guilty to the ticket. (Doc. 10, p. 26). Mason did not receive his property back until August 11, 2019, and his legal materials and soap were still missing. (Doc. 10-1, p. 5).

On August 1, 2019, Mason had a meeting with his attorney prior to his deposition being taken for another case. Corrections Officer Shay Allen remained in the room during the meeting, even after his attorney requested to speak privately with him. (Doc. 10, p. 27). Allen took notes during the entire meeting. (Doc. 10, p. 28).

On August 5, 2019, Mason filed a PREA sexual harassment grievance against Sergeant Reid for making him uncomfortable "due to [Reid] trying to engage in homosexual activity by stating [he has] a fat ass." (Doc. 10, p. 29; Doc. 1, p. 57). His claim

was investigated by internal affairs, and Warden Brookhart notified him that the allegations were found to be unsubstantiated. (Doc. 10, pp. 29-35; Doc. 1, p. 59).

On August 7, 2019, in retaliation, Mason was relocated to a cell with an inmate who internal affairs staff was trying to frame and also retaliate against. (Doc. 10, 33). Mason wrote a grievance requesting an immediate transfer and protective custody. (Doc. 10, p. 34). Internal Affairs Officer Piper responded by falsely stating that Mason refused to give a statement regarding his protective custody request. (Doc. 10, p. 34).

Mason met with internal affairs staff, Mary Weaver and Pluckett, regarding emails he had sent about the ongoing retaliation and harassment. Mason told them he did not feel safe, and he was then taken to segregation under a false investigation. (Doc. 10-1, pp. 1).

While in segregation, he complained to Corrections Officer John Doe 1 about the toilet not working. Corrections Officer John Doe 1 became angry and transferred him to an extremely hot cell that had feces on the walls and floor and was infested with spiders and bugs. (Doc. 10-1, p. 2). Mason notified Sergeant John Doe 2, Lieutenant John Doe 3, and a member of the mental health staff of the conditions of the cell, but remained there for five days. (Doc. 10-1, pp. 3-4). Upon release from segregation, the gallery officer told Mason to sign the property form stating that he had received all of his property or go back to segregation. Upon returning to his cell, more of his property was gone. (Doc. 10-1, p. 6).

On September 3, 2019, Mason was placed in Three Cell House. (Doc. 10-1, pp. 10-11). Reid was intentionally placed in the same cell house on September 3rd, 14th, and 19th, and December 8th in order to harass and retaliate against him. (Doc. 10, p. 32;

Doc. 10-1, p. 11). During this time, Reid made sexual statements and gestures to Mason. (Doc. 10-1, pp. 11, 26).

Due to a court order in another lawsuit, Mason was to watch camera recordings in order to identify defendants. (Doc. 10-1, p. 14). To watch the camera recordings, Internal Affairs Staff Piper placed Mason in an open area where inmates could walk pass and see Mason in the office watching the videos. As a result, inmates now believe that Mason is snitching and giving information to Lawrence staff. (Doc. 10-1, p. 14).

Internal Affairs Staff Joshua Young met with Mason on October 7, 2019, regarding Mason's protective custody request. He attempted to bribe Mason by stating that if Mason stopped writing grievances then he could assign Mason a job, place him in school, talk to the mailroom staff, and have Sergeant Reid leave Mason alone. (Doc. 10-1, p. 16). Young told Mason that he would place him in segregation and take his property, unless Mason signed a document stating that he felt safe. If Mason signed the document, then Young would transfer him to East Moline Correctional Center and ensure that the staff would leave him alone. Mason signed the form, but the retaliatory acts continued. (Doc. 10-1, p. 17).

On October 23, 2019, Corrections Officer Fitch would not allow Mason to take documents with him to meet with his attorney. (Doc. 10-1, p. 17).

Internal affairs staff have also blocked emails sent by Mason. (Doc. 10-1, pp. 18-19, 22).

*Medical*

Mason was told by Nurse Jane Doe to take 1 tablet of Simvastatin every six hours. (Doc. 10-1, p. 19). At some point during a medical appointment, the doctor told Mason

that the dosage was too much. Because he has been taking too much medication, Mason has been having aching pains on his left side. (Doc. 10-1, p. 20). Finally, Mason states that he is being denied mental health assistance. (*Id.* at p. 12).

<h2 align="center">PRELIMINARY DISMISSALS</h2>

Mason makes several allegations against "mailroom staff and/or Internal Affairs Staff," who he identifies as John Does/Jane Does mail room staff and John Does/Jane Does internal affairs staff (*See* Doc. 10, pp. 2, 22). While a plaintiff may use the "John Doe" designation to refer to specific individual whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of staff violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Vague references to a group of staff, without specific allegations tying an individual defendant to the alleged unconstitutional conduct, do not meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. Thus, the claims against John Does/Jane Does mailroom staff and John Does/Jane Does internal affairs staff are dismissed without prejudice, and these defendants shall be dismissed from this action.

Mason's claims that he is receiving inadequate medical and mental health care will also be dismissed. Not only are these allegations improperly brought in this action regarding retaliation, harassment, and the mishandling of mail, but they are not asserted against a properly named defendant. *See Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013); *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007); FED. R. CIV. P. 18 and 20.

Based on the allegations of the Complaint, the Court finds it convenient to designate following fifteen Counts:

**Count 1:** First Amendment access to courts claim against Cecil, Reid, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle for the mishandling Mason's legal mail.

**Count 2:** First Amendment access to courts claim against Reid for confiscation Mason's legal materials on July 22, 2019.

**Count 3:** Fourteenth Amendment due process claim against Reid for confiscating Mason's property on July 22, 2019.

**Count 4:** Fourteenth Amendment due process claim against Reid, Loy, and Livingston for issuing Mason a false disciplinary ticket on July 22, 2019.

**Count 5:** Fourteenth Amendment due process claim against N. Pluckett, Loy, and Livingston for falsely reporting that Mason pled guilty to the disciplinary ticket issued on July 22, 2019.

**Count 6:** First Amendment access to courts claim against Allen, Livingston, Burle, and Jeffreys for interfering with a confidential meeting between Mason and his attorney on August 1, 2019.

**Count 7:** Eighth Amendment claim of cruel and unusual punishment against Reid, Brookhart, Jeffreys, Goins, Burle, Ulrich, Downer, and Livingston for ongoing harassment against Mason.

**Count 8:** Fourteenth Amendment due process claim against Weaver, Pluckett, Livingston, Burle, and Jeffreys for placing Mason in segregation under a false investigation.

**Count 9:** Eighth Amendment claim of unconstitutional conditions of confinement against John Doe 1, John Doe 2, John Doe 3, Ulrich, Livingston, Burle, and Jeffreys for placing Mason in an unsanitary segregation cell from August 10, 2019, to August 15, 2019.

**Count 10:**   Fourteenth Amendment due process claim against Ulrich, Livingston, Burle, and Jeffreys for the loss of Mason's property while he was in segregation.

**Count 11:**   Fourteenth Amendment due process claim against Cecil and Waltz for the confiscation of family photos mailed to Mason on September 14, 2019, and September 19, 2019.

**Count 12:**   First Amendment access to courts claim against Fitch, Waltz, Livingston, and Brookhart for not allowing Mason to take documents with him to meet with his attorney on October 23, 2019.

**Count 13:**   First Amendment claim of retaliation against Brookhart, Goins, Cecil, Reid, N. Pluckett, Weaver, Pluckett, Piper, Young, John Doe 1, John Doe 2, John Doe 3, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downer, Burle, and Jeffreys.

**Count 14:**   First Amendment claim for denying Mason access to the law library.

**Count 15:**   First Amendment free speech claim against Cecil for repeatedly mishandling Mason's incoming and outgoing mail.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[3]

### Count 1

Inmates have a First Amendment right both to send and receive mail, *Rowe v.*

---

[3] *See Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). This includes any claims Mason is attempting to bring under Illinois State Law for civil conspiracy. In the Complaint, Mason states the elements of civil conspiracy, but offers no additional facts or associates this claim with any specific defendant. (Doc. 10, p. 19).

*Shake*, 196 F.3d 778, 782 (7th Cir.1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). An inmate's legal mail, that is "mail designated as correspondence with an attorney," *Harrison v. Cty. of Cook. Ill.*, 364 F. App'x 250, 252 (7th Cir. 2010), is entitled to greater protections because of the potential for interference with his right of access to the courts.[4] *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577; *Castillo v. Cook Cty. Mail Room Dep't*, 990 F.2d 304, 305–06 (7th Cir.1993). Not every letter from a law office or the court, however, qualifies as privileged legal communication to be opened in the presence of the inmate. *See Guajardo-Palma*, 622 F.3d at 805-806; *Harrison* 364 F. App'x at 253; *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987).

To maintain a claim for denial of access to the courts based on the improperly opening of, or interference with privileged legal mail, a plaintiff must demonstrate some hindrance to his ability to prosecute a meritorious legal claim. No constitutional claim is stated unless the element of prejudice is met. *See Guajardo-Palma*, 622 F.3d at 805-806. A general policy or practice of opening and reading may be sufficient to show hinderance.

---

[4] The Seventh Circuit has clarified that, because a confidential communication with a lawyer is aimed to win a case rather than to enrich the marketplace of ideas, it is "more straightforward" to view an interference with legal mail claim as infringing on the right of access to the courts as opposed to the right of free speech. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 801, 803 (7th Cir. 2010) (prison official reading mail to or from prisoners who sue them "is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer."); *see also Delgado v. Godinez*, 683 F. App'x 528, 529 (7th Cir. 2017).

*Id.* Isolated incidents of interference with legal mail, however, are generally insufficient to maintain a claim. *See Bruscino v. Carlson,* 654 F.Supp. 609, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988).

Mason claims that his "legal mail and legal-oriented mail" were opened outside of his presence (Doc. 10, p. 18), which includes letters from (1) an appellate court; (2) the State Appellate Defender; (3) the State of Illinois Court of Claims; (4) the Attorney General; (5) his attorneys; (6) the Department of Law; and (7) the Department of Justice. He also alleges Heather Cecil refused to mail legal mail to (1) the NAACP because it was not addressed to an individual; (2) the Illinois State Police because it was in a sealed envelope; and (3) a private investigator for using legal envelopes for non-legal mail. He was overcharged for sending legal documents, and the sending and receiving of his legal mail was delayed on several occasions.

First, the Court notes that Mason does not have a right to be present when mail is opened that is not from an attorney who represents him or from whom he seeks representation. *Kaufman v. McCaughtry*, 419 F. 3d 678, 686 (7th Cir. 2005). Furthermore, Mason has not made a showing that the mishandling of his mail relating to his legal proceedings hindered his ability to pursue a legal claim or defense. Mason claims that he missed a deadline to appeal because the letter from an appellate court had previously been opened by prison staff, but he also states he did not "accept the mail due to it being opened without being in my presences with tape on the manila envelope to seal it back up[.]" (Doc. 10, p. 17). Accordingly, it appears that Mason missed the appellate court's deadline not because Defendants' actions hindered him by opening the letter, but because he refused to accept the letter. Mason also claims that he did not receive legal mail sent

from an appellate defender on June 21, 2019, until July 2, 2019, and the deadline to file a petition for leave to appeal was July 11, 2019. (Doc. 10, p. 21). He does not include any allegations, however, regarding how the delay hindered "his efforts to pursue" his legal claim. As mere delay or inconvenience is not an unconstitutional detriment, this allegation also does not demonstrate that he was denied access to the courts. *See Ortiz v. Downey,* 561 F.3d 664, 671 (7th Cir. 2009). Mason also does not state how Sergeant Reid hindered his ability to access the courts by tearing off the post-date sticker on July 22, 2019 (Doc. 10, p. 23), and so he shall be dismissed from Count 1.

Mason will be able to proceed with his claim of denial of access to the courts against Cecil to the extent he alleges that correspondence with his attorneys were read on multiple occasions outside his presence. *See Guajardo-Palma,* 622 F. 3d at 805 ("proof of a *practice* of reading a prisoner's correspondence with his lawyer should be ordinarily be sufficient to demonstrate hindrance."). Count 1 will also proceed against Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle who reviewed Mason's frequent grievances regarding the opening of his legal mail from his attorney and failed to address the constitutional violation. *Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015).

### Count 2

Mason claims that Reid confiscated his legal materials during a shakedown on July 22, 2019. (Doc. 10, p. 23). He does not, however, explain the connection between the confiscation of his "legal materials and an inability to pursue a legitimate challenge[,]" *Ortiz,* 561 F.3d at 671 (citations omitted), and so Count 2 will be dismissed.

### Count 3

In addition to confiscating his legal materials, Mason claims that Reid also took

personal photos. (Doc. 1, pp. 23-24). The Seventh Circuit has specifically held that an IDOC prisoner has an adequate post-deprivation remedy for confiscation of a prisoner's non-contraband property by IDOC personnel in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir. 1993). Thus, Mason is afforded due process in state court for the deprivation of his property, and Count 3 will be dismissed. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

### Counts 4 and 5

When a plaintiff brings an action under Section 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

Mason alleges that he was issued a false disciplinary ticket on July 22, 2019, for the possession of contraband and that Adjustment Committee member N. Pluckett falsely stated that he pled guilty to the ticket. (Doc. 10, pp. 26, 31). A disciplinary ticket, even if falsely issued, will not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Whether the procedures employed during his disciplinary proceedings violated due process need not be considered, however, because Mason has failed to plead that a protected interest was at stake requiring the protections of due

process.

Mason does not describe any deprivations of a protected liberty interest as a result of the false disciplinary ticket or the false statement that he plead guilty to the ticket. He states that the ticket was expunged and only claims the he was deprived of his property. (Doc. 10, p. 27; Doc. 1, p. 47). As previously mentioned, the Illinois Court of Claims provides an adequate remedy in an action for damages regarding the deprivation of property. Accordingly, Counts 4 and 5 are dismissed without prejudice.

**Count 6**

Mason claims that his "right to attorney client privileged communication" was violated by the presence of Corrections Officer Allen in the room with him and his attorney during a private meeting prior to his deposition. (Doc. 1, p. 27).

Although attorney-client privilege is not constitutional, inhibiting private communication with an attorney may constitute a denial of meaningful access to the courts. *Guajardo-Palma*, 622 F.3d at 802; *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980). Again, a litigant must identify an underlying nonfrivolous claim that the prison officials' actions impeded. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996).

Here, Mason has not identified any harm he suffered as a result of Allen's actions. His conclusory allegation that Allen was present during the meeting in violation of his rights is insufficient. (Doc. 10, p. 32). Without some indication that an existing or potential claim has been prejudiced, Mason fails to state a claim for denial of access to the courts, and Count 6 will be dismissed.

## Count 7

Mason claims that Sergeant Reid has been harassing him by tearing off the post-date sticker from his mail, writing him a false shakedown slip and disciplinary ticket, confiscating his property, and continually making sexual comments and gestures to him, and so Count 7 will proceed against Reid. (Doc. 10, pp. 23, 24, 29; Doc. 10-1, pp. 10-11, 26). *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Count 7 also will proceed against Brookhart, Jeffreys, Goins, Burle, Ulrich, Downer, and Livingston as Mason has alleged the constitutional violation was brought to their attention and they failed to act. *Perez*, 792 F.3d at 782.

## Count 8

The Seventh Circuit has explained that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Segregation under certain conditions, however, may still constitute a deprivation of a liberty interest if the placement segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Mathews v. Brown*, 768 F. App'x 537, 540 (7th Cir. 2019). When considering a due process claim for placement in segregation, the Court is to consider "the duration and conditions of the confinement." *Mathews*, 768 F. App'x at 540.

Mason claims he was held in segregation for only five days. Because "[a] confinement of that length does not implicate a liberty interest[,]" Count 8 will be dismissed. *Obriecht v. Raemisch*, 565 F. App'x 535, (7th Cir. 2014) (ruling that seventy-eight

days in "deplorable conditions" did not implicate a liberty interest) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)).

## Count 9

Mason alleges that while in segregation he was intentionally placed in a hot unsanitary cell with feces on the floor and walls and infested with spiders. (Doc. 10-1, p. 2). He notified John Doe 1, John Doe 2, and John Doe 3 of the cell conditions and asked to be moved, but Defendants disregarded his requests. Count 9 will proceed against John Doe 1, John Doe 2, and John Doe 3, but will be dismissed against Ulrich, Livingston, Burle, and Jeffreys. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Mason claims Ulrich, Livingston, Burle, and Jeffreys responded to his grievances regarding his cell conditions. Because he wrote the grievances notifying them of his cell conditions after his release from segregation, he has not demonstrated that these defendants had knowledge of his cell conditions and disregarded the substantial risk of serious harm caused by those conditions. (Doc. 10-1, p. 4). *See Farmer v. Brennan*, 511 U.S. 825 (1994).

## Counts 10 and 11

Mason claims that when he returned to his cell from being in segregation, his JVC headphones, a blue shirt, and extension cord, and legal books were missing. (Doc. 10-1, p. 6). Also, two sets of family photos were mailed to him that he did not receive. (Doc. 10-1, p. 13). As discussed in Counts 3, 4, and 5, the State of Illinois affords due process to address Mason's property deprivation, and so Counts 10 and 11 will be dismissed without prejudice.

## Count 12

Mason alleges that Corrections Officer Fitch prohibited him from taking his legal

documents to his meeting with his attorney on October 23, 2019. (Doc. 10-1, pp. 17-18). Because he had to take his documents back to his cell, Mason was unable to sign his legal documents over to his new attorney. (*Id.*). He was then forced to mail the documents to his attorney so that mailroom staff and internal affairs staff could delay, open, and read the documents before mailing them. Mason, again, has not identified an underlying nonfrivolous legal claim that Fitch impeded by prohibiting him from giving the documents to his attorney at the meeting, and so Count 12 will be dismissed. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

## Count 13

To prevail on his First Amendment retaliation claim, Mason must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted).

Mason has set forth sufficient allegations to proceed on a retaliation claims against Brookhart, Goins, Cecil, Reid, N. Pluckett, Weaver, Pluckett, Piper, Young, John Doe 1, John Doe 2, John Doe 3, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downer, Burle, and Jeffreys. (Doc. 10, pp. 19, 20; Doc. 10-1, p. 11).

## Count 14

Mason alleges that he has been denied access to the law library in retaliation. (Doc. 10-1, p. 29). This claim, however, is not asserted against any named defendant, and so Count 14 will be dismissed. *Twombly*, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2); *see also*

*Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir. 2010).

## Count 15

Prisoners have a First Amendment right both to send and receive mail in communication with private individuals outside prison. *Rowe,* 196 F.3d at 782; *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir. 2000). With respect to general mail communications, a valid First Amendment claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman,* 226 F.3d at 572 (7th Cir. 2000). In the Complaint, Mason details repeated instances in which his mail was allegedly mishandled by Cecil, and so Count 15 will proceed.

Mason also claims that his First Amendment rights were violated by the internal affairs staff for delaying and blocking emails. (Doc. 10-1, pp. 18-19, 22). This allegation is not asserted against individually named defendants, however, and is dismissed.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

As previously noted, Mason will be allowed to proceed with Counts 9 and 13 against John Does 1-3, but these individuals must be identified with particularity before service of the Complaint can be made. Mason will have the opportunity to engage in limited discovery to ascertain the identity of this individual. *Rodriquez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 832 (7th Cir. 2009). Dee Dee Brookhart, the Warden of Lawrence, remains a defendant in this action in her official and individual capacities, and shall be responsible for responding to discovery aimed at identifying the unknown defendants. Once the name of each John Doe is discovered, Mason shall file a motion to substitute the newly identified defendant in place of the generic designation in the case

caption and throughout the Complaint.

Mason filed a Motion for a Preliminary Injunction and/or Temporary Restraining Order (Doc. 7). In the Motion, Mason recounts many of the same facts alleged in the Complaint and states that he continues to be harassed, sexually harassed, threatened, and retaliated against by staff at Lawrence. (Doc. 7, p. 2). He states that he will suffer irreparable harm because mail interference will interfere with his legal proceedings and "tends to chill and inmate['s] First Amendment right to petition the courts[.]" (Doc. 7, p. 9). Mason claims he fears for his life and asks the Court to order an investigation concerning the ongoing retaliation and harassment and to appoint him counsel. (*Id.* at p. 11).

There are significant differences between a temporary restraining order ("TRO") and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

In contrast to a TRO, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

The Court concludes that a TRO should not be issued in this matter. Although Mason claims that he is still being subjected to harassment, retaliation, and interference with his legal mail, he does not cite to specific current incidents or conduct on the part of Defendants regarding these allegations. The Court lacks sufficient information to assess his need for emergency relief or prepare a TRO that is sufficiently narrowly-tailored to address his present concerns. Mason's vague assertions are not sufficient to clearly demonstrate that he will suffer immediate and irreparable harm before Defendants can be heard in opposition, and so the request for a TRO is **DENIED** at this time.

Mason also seeks a preliminary injunction. Although the Court is allowing Mason's claim regarding the repeated opening of mail from his attorneys to proceed past threshold, he has not shown how he has been disadvantaged and prejudiced in pursuing any of his legal claims by Defendants' conduct. He states that he has missed court deadlines because mail has been delayed, but he does not provide any further information. (Doc. 7, p. 2). In addition to claiming interference with his legal mail, Mason claims that he was also prevented from filing documents in this case. (Doc. 7, p. 11). The Complaint has been successfully filed, however, and Mason has already submitted over 450 pages of filings in this case since December 17, 2019. Therefore, to the extent he requests preliminary injunctive relief regarding his claims for interference with his legal mail and denial of access to the courts, he has not proved that he is likely to succeed on

the merits of those claims or irreparable harm, and so the request is denied.

Mason's request for a preliminary injunction regarding ongoing harassment, sexual harassment, and retaliation will remain pending until Defendants have been served. Defendants are **ORDERED** to respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

Finally, Mason's claims regarding his healthcare have been dismissed, and so any requests for injunctive relief for medical treatment are not related to his surviving claims and are outside the scope of this lawsuit. *See Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (citations omitted). Mason is **ADVISED** that if he wishes to pursue the unrelated claims regarding his medical treatment, he must do so by filing a separate case under 42 U.S.C. § 1983.

Mason's request for the recruitment of counsel is denied.[5] In the motion, Mason does not provide any information regarding attempts to recruit counsel on his own or whether he has been effectively precluded from doing so. Because he has not made this showing, the Court finds that Mason has not made a reasonable attempt to find counsel. Should Mason choose to move for recruitment of counsel at a later date, the Court directs Mason to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and address of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.

---

[5] In evaluating Mason's request for the recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** shall proceed against **Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston,** and **Burle,** but is **DISMISSED** as to **Reid**. **COUNT 7** shall proceed against **Reid, Brookhart, Jeffreys, Goins, Burle, Ulrich, Downer,** and **Livingston**. **COUNT 9** shall proceed against **John Doe 1, John Doe 2,** and **John Doe 3,** but is **DISMISSED** against **Ulrich, Livingston, Burle,** and **Jeffreys**. **COUNT 13** shall proceed against **Brookhart, Goins, Cecil, Reid, N. Pluckett, Weaver, Pluckett, Piper, Young, John Doe 1, John Doe 2, John Doe 3, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downer, Burle,** and **Jeffreys. COUNT 15** shall proceed against **Cecil. COUNTS 2, 3, 4, 5, 6, 8, 10, 11, 12,** and **14** are **DISMISSED** without prejudice. Defendants **John/Jane Does 1,** *Mail Room Staff,* and **John/Jane Does 2,** *Internal Affairs,* are dismissed without prejudice. The Clerk is **DIRECTED** to terminate them as defendants in this action. The Clerk is also **DIRECTED** to **ADD John Doe 3,** *1st Shift Lieutenant,* to the docket as a defendant in accordance with footnote 1 and to rename the pleading at Doc. 1 in accordance with footnote 2.

**IT IS FURTHER ORDERED** that the request for a temporary restraining order is **DENIED** without prejudice, and the requests for a preliminary injunction regarding interference with legal mail, denial of access to courts, and medical treatment are **DENIED** without prejudice. The request for a preliminary injunction regarding retaliation and harassment by staff at Lawrence is **DEFERRED**. Defendants are **ORDERED** to respond to the request for preliminary injunction within 14 days of service of the pleadings in this case. The request for recruitment of counsel is also **DENIED**

without prejudice. (Doc. 7).

The Clerk of Court shall prepare for **Brookhart, Goins, Cecil, Reid, N. Pluckett, Weaver, Pluckett, Piper, Young, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downer, Burle, Jeffreys,** and **John Does 1-3** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 10), this Memorandum and Order, and the Motion for Preliminary Injunction (Doc. 7) to Defendants' place of employment as identified by Mason. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the unknown defendants, **John Does 1, 2,** and **3,** until such time as Mason has identified him or her by name in a properly filed motion for substitution. Mason is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS FURTHER ORDERED** that if judgment is rendered against Mason, and the judgment includes the payment of costs under § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.

*See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Mason is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   January 29, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Mason is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Mason need not submit any evidence to the Court at his time, unless otherwise directed by the Court.