## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICKEY MASON,<br>#R04326,<br><br>           Plaintiff,<br><br>v.<br><br>HEATHER CECIL, ROBERT REID,<br>MARY WEAVER, ADAM PUCKETT,<br>NICHOLAS PUCKETT, JOSHUA<br>YOUNG, JOHN DOE 1, CODY PIPER,<br>REX FITCH, SHAY ALLEN, KIMBERLY<br>ULRICH, WILLIAM LOY, JOHN DOE 2,<br>LACIE LIVINGSTON, DEEDEE<br>BROOKHART, CHRISTOPHER<br>WALTZ, RUSSELL GOINS, DANIEL<br>DOWNEN, AMY BURLE, ROB<br>JEFFREYS, and JOHN DOE 3,<br><br>           Defendants. | Case No. 19-cv-01375-NJR |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Plaintiff Mickey Mason, an inmate of the Illinois Department of Corrections currently incarcerated at Lawrence Correctional Center ("Lawrence"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging the deprivation of his constitutional rights. (Doc. 10). Prior to filing the Complaint, Mason filed a motion for preliminary injunction and/or temporary restraining order. (Doc. 7).

The Court conducted a preliminary review of the Complaint, under 28 U.S.C. § 1915A, and issued a Merit Review Order, allowing Mason to proceed on the following claims:

**Count 1:** First Amendment access to courts claim against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle for the mishandling Mason's legal mail.

**Count 7:** Eighth Amendment claim of cruel and unusual punishment against Reid, Brookhart, Jeffreys, Goins, Burle, Ulrich, Downen, and Livingston for ongoing harassment against Mason.

**Count 9:** Eighth Amendment claim of unconstitutional conditions of confinement against John Doe 1, John Doe 2, and John Doe 3 for placing Mason in an unsanitary segregation cell from August 10, 2019, to August 15, 2019.

**Count 13:** First Amendment claim of retaliation against Brookhart, Goins, Cecil, Reid, Nicholas Puckett, Weaver, Adam Puckett, Piper, Young, John Doe 1, John Doe 2, John Doe 3, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downen, Burle, and Jeffreys.

**Count 15:** First Amendment free speech claim against Cecil for repeatedly mishandling Mason's incoming and outgoing mail.

(Doc. 14). The Court denied Mason's request for a temporary restraining order and his request for a preliminary injunction regarding his claims of interference with legal mail, denial of access to courts, and medical treatment. The Court deferred ruling on the preliminary injunction motion to the extent Mason was alleging ongoing retaliation, sexual harassment, and harassment by staff at Lawrence, and Defendants were ordered to respond to the allegations. Defendants filed a response on May 26, 2020 (Doc. 42), and Mason filed a reply on June 25, 2020 (Doc. 46). The Court held a hearing on the motion on August 19, 2020.

BACKGROUND

In the Complaint, motion for preliminary injunction, and several exhibits, Mason alleges that after sending mail to IDOC Director Rob Jeffreys on July 7, 2019, notifying him of legal mail interference at Lawrence, he has been continually subjected to

harassment and retaliation by staff. (Doc. 10, pp. 18, 21). The conduct alleged includes:

- Continual interreference with mail and email;
- Confiscation of personal property—including legal documents and photos;
- Issuance of a false shake down slip and disciplinary report;
- Inference with attorney communication and meetings; and
- Refusal to place Mason in protective custody.

More specifically, on August 5, 2019, Mason filed a PREA sexual harassment grievance against Sergeant Reid for making him uncomfortable "due to [Reid] trying to engage in homosexual activity by stating [he has] a fat ass." (Doc. 10, p. 29; Doc. 1, p. 57). His claim was investigated by internal affairs, and Warden Brookhart notified him that the allegations were found to be unsubstantiated. (Doc. 10, pp. 29-30; Doc. 1, p. 59). Reid was then intentionally assigned to the same cell house as Mason on August 18 and 29, September 3, 14, and 19, and December 8, 2019, in order to harass and retaliate against Mason. (Doc. 8, pp. 7, 12; Doc. 10-1, p. 11). During this time, Reid made sexual statements and gestures to Mason. (Doc. 10-1, pp. 11, 26).

Mason met with internal affairs staff, Mary Weaver and Adam Puckett, regarding the ongoing retaliation and harassment on August 10, 2019. Mason told them he did not feel safe. Puckett threatened Mason with the issuance of a false disciplinary ticket, and Mason was taken to segregation under a false investigation. (Doc. 10-1, pp. 1). While in segregation, after complaining about the toilet not working in his cell, he was transferred to an extremely hot cell that had feces on the walls and floor and was infested with spiders and bugs. (Doc. 10-1, p. 2).

Due to a court order in another lawsuit, Mason was to watch camera recordings in order to identify defendants. (Doc. 10-1, p. 14). To watch the camera recordings, Internal Affairs Staff Piper placed Mason in an open area where inmates could walk pass and see

Mason in the office watching the videos. As a result, inmates now believe that Mason is snitching and giving information to Lawrence staff. (Doc. 10-1, p. 14).

Internal Affairs Staff Joshua Young met with Mason on October 7, 2019, regarding Mason's protective custody request. He attempted to bribe Mason by stating that if Mason stopped writing grievances then he would assign Mason a job, place him in school, talk to the mailroom staff, and have Sergeant Reid leave Mason alone. (Doc. 10-1, p. 16). Young told Mason that he would place him in segregation and take his property, unless Mason signed a document stating that he felt safe. If Mason signed the document, then Young would transfer him to East Moline Correctional Center and ensure that the staff would leave him alone. Mason signed the form, but the retaliatory acts continued. (Doc. 7, p. 3; Doc. 10-1, p. 17). Mason met again with Mary Weaver on November 9, 2019. (Doc. 10-1, p. 21). He asked to go to protective custody due to the ongoing harassment and retaliation by staff, and she bribed him with a job and placement in school if he "worked with them." (*Id.* at p. 21-11).

Mason requests the Court to "order an investigation concerning ongoing issues." (Do. 7, p. 13). He asks for an injunction because he does not feel safe at Lawrence and believes his life is in danger. (*Id.*).

Defendants argue that the motion should be denied because Mason cannot meet the burden necessary for obtaining preliminary injunctive relief. (Doc. 42, p. 4). Defendants deny that mailroom or internal affairs staff have retaliated against Mason by interfering with his mail. (*Id.* at p. 5). They assert that Mason's mail was handled in accordance with the directives outlined in the Illinois Administrative Code and institutional directives and not with any intent to harass or retaliate against him.(*Id.*).

Likewise, internal affairs staff has properly addressed any concerns Mason has regarding his safety, and Mason does not have any proof beyond his own statements that he has been subjected to harassment, retaliation, or suffered any harm. (*Id.* at p. 5, 6).

Defendants further argue that the type of relief Mason is requesting by asking the Court to conduct an investigation is not entirely clear. (*Id.* at p. 6). They believe he is essentially asking for aid in discovery of this lawsuit, which is not appropriate relief to be granted through a preliminary injunction. (*Id.*).

In Mason's response he states that the retaliation and harassment is ongoing. (Doc. 46, p. 3). Recently staff has retaliated against him by opening an envelope dated June 6, 2020, from his attorney outside his presence and confiscating documents contained in the envelope. Mason was also refused a legal call with his attorney on June 19, 2020. (*Id.*).

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any

likelihood of success—in other words, a greater than negligible chance of winning."

*AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

The Court finds that Mason has failed to demonstrate all of the factors necessary for obtaining a preliminary injunction. First, Mason has not demonstrated "any likelihood of success" on his First Amendment claim of retaliation against mailroom and internal affairs staff. To prevail on a First Amendment retaliation claim, a plaintiff must ultimately show that he: (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). At the hearing, Mason testified that he thought his mail was being mishandled intentionally based on his

experience with correctional facilities and that staff tend to retaliate against inmates who write grievances regarding staff conduct. To support his allegation, he submitted affidavits from other inmates who also claim retaliatory mail interference. (*See* Doc. 52). He stated he believed his legal mail was being opened outside his presence because when he would peel back the flap it would still be sticky, indicating that heat had been applied to reseal the envelope. At the hearing Mason pointed to a grievance response from Defendant Cecil, the mailroom supervisor, to demonstrate Defendants are intentionally interfering with his mail. He testified that Cecil stated mail can and will be opened without Mason present regardless of how the mail is marked, contrary to IDOC protocols.

Other than speculation, Mason has not presented any evidence indicating that Defendants' conduct was at least in part motivated because he engaged in First Amendment protected activity. In Cecil's grievance response that Mason submitted as an exhibit, Cecil does not state that mail generally will be opened regardless of how it is marked, but wrote "mail from *appellate court* is not legal or privileged and can/will be opened outside your presence regardless of how it's marked." (Doc. 38, p. 6) (emphasis added). This statement is in accordance with IDOC regulation which limits "legal mail" mail to and from a registered attorney providing legal representation, State's Attorneys, the Illinois Attorney General, judges or magistrates, and any organization providing legal representation. 20 Ill. Admin. Code § 525.110. Also, considering the letter in question contained an appellate court decision (*see* Doc. 7-1, p. 10), opening the letter outside of Mason's presence was also in accordance with the Constitution. *See Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (correspondence from a court to a litigant is a public document).

At the hearing, Mason presented as evidence of retaliatory mail interference a

piece of mail with a "return to sender" sticker. In response to Defense Counsel's questions, he stated he was not aware that the sticker was placed on the envelope by the United States Postal Service and not by the Lawrence mailroom, and so, at this point it is not even clear that all the issues with the mail can be attributed to Lawrence mailroom staff. Mason has also presented conflicting statements regarding which First Amendment activity prompted the retaliation by Defendants. In the Complaint, he claims that he was already having issues with his mail prior to sending the complaint letter to Director Jeffreys on July 7, 2019, which prompted the retaliation. At the hearing he testified that once he started complaining about issues at Lawrence that is when the retaliation began. He also testified, however, that he was retaliated against prior to his transfer to Lawrence and continued to be harassed and retaliated against once he arrived at Lawrence, and then he began writing grievances. Because there is no indication of a "causal link between the protected act and the alleged retaliation[,]" Mason has not demonstrated a likelihood of success on his First Amendment Claim against mailroom and internal affairs staff. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Ill.*, 424 F.3d 659, 669 (7th Cir. 2005).

Mason also has not demonstrated a likelihood of success on the merits of his cruel and unusual punishment claim against Sergeant Reid. Mason claims that Reid has harassed him by removing the postdate sticker from his mail on July 22, 2019, writing him a false shakedown slip and shaking down his cell, and making sexually explicit gestures and comments towards him on six different dates in 2019. Taking Mason's testimony as true, the unprofessional conduct described is not sufficient to constitute cruel and unusual punishment that rises to the level of an Eighth Amendment claim. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison

guards does not rise to the level of cruel and unusual punishment.").

Mason has demonstrated, however, a likelihood of success of succeeding on the merits of his First Amendment retaliation against Sergeant Reid. He claims that after he filed a grievance about Reid tearing the postdate sticker from his mail, Reid shook down his cell, wrote him a false disciplinary ticket, and continued to make sexual statements to him. There appears to be a factual dispute regarding whether his cell was shaken down pursuant to a routine 30 day shakedown policy or in retaliation for Mason filing the grievance, and there is nothing in the record refuting his claim that Reid has been making derogatory comments to him. Mason has therefore shown a "better than negligible" chance of succeeding on the merits of his retaliation claim against Reid. *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 966 (7th Cir. 2018) (citations omitted).

Although Mason has demonstrated a likelihood of success of on the merits of his First Amendment claim against Sergeant Reid, that is not the end of the analysis. The Court finds that Mason's traditional legal remedies are adequate, and he has not demonstrated that he will suffer irreparable harm without a preliminary injunction. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of American, Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008). Although it does appear that Mason is repeatedly having problems with his mail, he is still sending and receiving mail and able to file documents in his pending litigations. Additionally, he testified that he was not sure if Sergeant Reid was still assigned to his cell house and that his last verbal interaction with Sergeant Reid was in December 2019. Mason also stated that other than the inappropriate sexual comments, Sergeant Reid has not made any threats of physical injury toward him or physically assaulted him. He testified that he has asked for protective custody because he is

threatened by staff. But again, this threat is speculative and based on being placed in investigative segregation for five days over a year ago in August 2019. His testimony does not suggest that he will suffer irreparable harm without interim relief, and a final determination on the merits thus provides an adequate remedy at law. *See Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) ("harm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial.") (internal citations omitted). Accordingly, Mason has not met his burden and made the clear showing necessary to warrant this drastic remedy, and the motion is denied.

IT IS SO ORDERED.

DATED:   August 24, 2020

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**