IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICKEY MASON,
#R04326,

              Plaintiff,

v.

              Case No. 19-cv-01375-SPM

HEATHER CECIL, *et al.*,

              Defendants.

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Mickey Mason, an inmate of the Illinois Department of Corrections currently incarcerated at Lawrence Correctional Center ("Lawrence"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging the deprivation of his constitutional rights. (Doc. 10). Pending before the Court are several motions filed by Mason: Motion for Leave to Appoint Counsel (Doc. 73), Motion for Leave to File First Amended Complaint (Doc. 74), Motion for Preliminary Injunction (Doc. 77), and two Motions for Leave to Submit New Evidence in Support of the Motion for Preliminary Injunction (Docs. 79, 83). In response to the Motion for Preliminary Injunction, Defendants have filed a Motion to Strike. (Doc. 78).

### BACKGROUND

In the Complaint, Mason alleges that after sending mail to IDOC Director Rob Jeffreys on July 7, 2019, notifying him of legal mail interference at Lawrence, Mason has been continually subjected to harassment and retaliation by staff. (Doc. 10, pp. 18, 21). The conduct alleged includes:

- Continual interreference with mail and email;
- Confiscation of personal property – including legal documents and photos;
- Issuance of a false shake down slip and disciplinary report;
- Inference with attorney communication and meetings; and
- Refusal to place Mason in protective custody.

Page 1 of 15

More specifically, on August 5, 2019, Mason filed a PREA sexual harassment grievance against Sergeant Reid for making him uncomfortable "due to [Reid] trying to engage in homosexual activity by stating [he has] a fat ass." (Doc. 10, p. 29; Doc. 1, p. 57). His claim was investigated by internal affairs, and Warden Brookhart notified him that the allegations were found to be unsubstantiated. (Doc. 10, pp. 29-35; Doc. 1, p. 59). Reid was then intentionally assigned to the same cell house as Mason on August 29, September 3, 14, and 19, and December 8, 2019, in order to harass and retaliate against him. (Doc. 10, p. 32; Doc. 10-1, p. 11). During this time, Reid made sexual statements and gestures to Mason. (Doc. 10-1, pp. 11, 26).

Mason met with internal affairs staff, Mary Weaver and Adam Puckett, regarding the ongoing retaliation and harassment on August 10, 2019. Mason told them he did not feel safe. Puckett threatened Mason with the issuance of a false disciplinary ticket, and Mason was taken to segregation under a false investigation. (Doc. 10-1, pp. 1). While in segregation, after complaining about the toilet not working in his cell, he was transferred to an extremely hot cell that had feces on the walls and floor and was infested with spiders and bugs. (Doc. 10-1, p. 2).

Due to a court order in another lawsuit, Mason was to watch camera recordings in order to identify defendants on October 2 and 3, 2019. (Doc. 10-1, p. 14). To watch the camera recordings, Internal Affairs Staff Piper placed Mason in an open area where inmates could walk pass and see Mason in the office watching the videos. As a result, inmates now believe that Mason is snitching and giving information to Lawrence staff. (Doc. 10-1, p. 14).

Internal Affairs Staff Joshua Young met with Mason on October 7, 2019, regarding Mason's protective custody request. He attempted to bribe Mason by stating that if Mason stopped writing grievances then he would assign Mason a job, place him in school, talk to the mailroom staff, and have Sergeant Reid leave Mason alone. (Doc. 10-1, p. 16). Young told Mason that he would place him in segregation and take his property, unless Mason signed a document stating that

Page 2 of 15

he felt safe. If Mason signed the document, then Young would transfer him to East Moline Correctional Center and ensure that the staff would leave him alone. Mason signed the form, but the retaliatory acts continued. (Doc. 7 , p. 3; Doc. 10-1, p. 17). Mason met again with Mary Weaver on November 8, 2019. (Doc. 10-1, p. 21). He asked to go to protective custody due to the ongoing harassment and retaliation by staff, and she bribed him with a job and placement in school if he "worked with them." (*Id.* at p. 21-11).

Following a preliminary review of the Complaint pursuant to Section 1915A and dismissal of the John Doe Defendants, Mason is proceeding on the following four claims:

| | |
|---|---|
| **Count 1:** | First Amendment access to courts claim against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle for the mishandling Mason's legal mail. |
| **Count 7:** | Eighth Amendment claim of cruel and unusual punishment against Reid, Brookhart, Jeffreys, Goins, Burle, Ulrich, Downer, and Livingston for ongoing harassment against Mason. |
| **Count 13:** | First Amendment claim of retaliation against Brookhart, Goins, Cecil, Reid, Nicholas Puckett, Weaver, Adam Puckett, Piper, Young, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downer, Burle, and Jeffreys. |
| **Count 15:** | First Amendment free speech claim against Cecil for repeatedly mishandling Mason's incoming and outgoing mail. |

Along with the Complaint, Mason filed a motion for preliminary injunction alleging ongoing harassment, sexual harassment, and retaliation by staff at Lawrence. He requested the Court to "order an investigation concerning ongoing issues." (Doc. 7, p. 13). He stated he sought an injunction because he does not feel safe at Lawrence and believes his life is in danger. (*Id.*). The Court held a hearing on the motion and subsequently denied the request. (Doc. 55). The Court found that Mason had not demonstrated any likelihood of success on his First Amendment claim of retaliation against mailroom and internal affairs staff or his Eighth Amendment cruel and unusual punishment claim against Sergeant Reid. Additionally, although Mason had demonstrated a likelihood of success of succeeding on the meris of his First Amendment claim of retaliation

Page 3 of 15

against Sergeant Reid, the Court ruled that traditional legal remedies were adequate and Mason had not shown irreparable harm.

### MOTION FOR LEAVE TO APPOINT COUNSEL

Mason has filed a fifth request asking the Court to recruit counsel to represent him. (Doc. 73; *see also* Docs. 7, 14, 39, 41, 52, 53, 58, 63). Mason asserts that he is unable to represent himself because (1) he suffers from a mental illness and is not receiving adequate mental health treatment due to frequent lockdowns; (2) Lawrence staff continue to harass and retaliate against him by destroying his mail causing increased anxiety and stress; (3) the case is complex and he has no legal training; and (4) he is being denied access to legal research materials.

Determining whether to appoint counsel is a two-step analysis. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). The Court must make the following two inquiries:   (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so; *and* (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Id*.

The Court previously determined that Mason made reasonable attempts to obtain counsel on his own, and so, must now decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola,* 718 F. 3d 692, 696 (7th Cir. 2013) (quoting *Pruitt,* 503 F. 3d at 655). This inquiry requires the Court to consider "all tasks that normally attend litigation, including evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial," as well as the plaintiff's "literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through

all phases of the case. *Navejar,* 718 F.3d at 696.

Here, the record demonstrates that Mason is capable of litigating this case on his own. Despite his mental illness and lack of access to the law library, Mason continues to file hundreds of pages of motions, response and reply briefs, and exhibits with the Court.[1] These filings are not only coherent, but they consistently contain citations to statutory and administrative law and quotes from and citations to case law in support of his arguments. Mason states that the difficulty of this case has exceeded his ability to conduct tasks that normally attend litigation such as evidence gathering and preparing and responding to motions and other court filings. But a review of docket demonstrates he has and continues to perform all of these tasks. Finally, the Court notes that Mason has experience in federal Court. He has litigated at least six other cases in this circuit, including two cases without court recruited counsel.[2] Thus, the Court finds that Mason is a "competent litigator with a full grasp of the issues," and the request for counsel is denied. *See Ajala v. Univ. Wisc. Hosp. and Clinics,* 836 F. App'x 447, 454 (7th Cir. 2020).

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On December 11, 2020, the Court denied Mason's initial motion requesting additional time to amend the Complaint. (Docs. 70, 71). The deadline to amend the complaint, as set in the Initial Scheduling and Discovery Order, was October 21, 2020, and Mason did not provide any explanation for the Court to determine good cause existed to modify the deadline two months after it had expired. Despite the Court's ruling, Mason has filed a Motion for Leave to File First Amended Complaint, along with the proposed amended complaint. (Doc. 74). Because the Court has already denied Mason's request for more time to file an amended complaint, the Motion for

---

[1] In support of his claim that his mental illness hinders his ability to represent himself, Mason has only provided a Mental Health Progress Note and a Treatment Plan for anxiety that is over four years old. While the Treatment Plan prescribes individual therapy every 30-60 days for anxiety, the Mental Health Progress Note indicates that there is "no diagnosis." (Doc. 73, p. 5-6). It is not clear how Mason's mental illness is preventing him from litigating his claims.
[2] *See Mason v. Rottar,* No. 09-cv-06701 (N.D. Ill. Oct. 23, 2009); *Mason v. Spiller,* No. 17-cv-00867 (S.D. Ill. Aug. 15, 2017); *Mason v. Unknown Party,* No. 17-cv-01025 (S.D. Ill. Sept. 25, 2017); *Mason v. Orange Crush,* No. 17-cv-01026 (S.D. Ill. Sept. 25, 2017); *Mason v. Freeman,* No. 18-cv-02029 (S.D. Ill. Oct. 29, 2018); *Mason v. Snell,* No. 19-cv-01019 (S.D. Ill. Sept. 18, 2019).

Leave to File First Amended Complaint is denied.

To the extent that Mason is asking the Court to reconsider its previous ruling, the request is also denied. *See* FED. R. CIV. P. 54(b). In the Motion for Leave to File First Amended Complaint, Mason asks the Court to allow him to amend the Complaint to include allegations of continual constitutional violations that occurred after he commenced this lawsuit. In his reply brief to Defendants' response in opposition, Mason states that it is in the interest of justice to allow him to amend because he was denied access to the law library due to the COVID pandemic, where he can properly respond to motions, provide case law, get copies, and access notaries. (Doc. 76, p. 5). He also claims that he was prevented by Defendants from properly identifying John Does because they would not provide him with the printed names of the signatures from the wing check logs as requested.

Motions to reconsider interlocutory orders under this rule "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." C*aisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotations and citations omitted). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co*., 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations and citation omitted). Because the standards for reconsideration are exacting, the Seventh Circuit has stressed that appropriate issues for reconsideration "rarely arise." *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotations and citation omitted).

Here, Mason has not presented any reason for the Court to reconsider its order denying him additional time to amend. He does not claim that the Court has made an error of law or of fact, and his arguments have either been previously raised or could have been presented in his initial motion. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264, 1270 (7th Cir. 1996) (a motion for reconsideration is not appropriate for revisiting previously raised arguments or "arguing

Page  6  of  15

matters that could have been heard during the pendency of the previous motion"). Mason's argument that he was prevented by Defendants from identifying the John Does was addressed by the Court when denying his third request for an extension to identify the unknown defendants. (Doc. 71). Mason was instructed to contact Defendant Brookhart with the specific names from the wing check logs he would like identified, and he did not do so. (*See* Docs. 61, 69, 71). As for his argument regarding denial of access to the law library, this argument was not previously raised, and it is also not clear how this would have prevented him from filing an amended complaint. Since the entry of the Initial Scheduling and Discovery Order, Mason has successfully filed documents with this Court. And, as he is aware,[3] when filing a complaint, all that is needed is a short and plain statement telling what each defendant did wrong. A successful pleading does not require legal research. *See* FED. R. CIV. P. 8. Thus, it appears that Mason made the choice to file other motions and exhibits with the Court, rather than diligently seek to amend the Complaint, and the Motion is denied.

## MOTION FOR PRELIMINARY INJUNCTION

Mason has filed a second request for a preliminary injunction. (Doc. 77). In support of his Motion for Preliminary Injunction, Mason submitted two additional Motions for Leave to Submit New Evidence. (Docs. 79, 83). These subsequent motions are granted, and the Court will consider the claims and attached exhibits in the Motions, along with the Motion for Preliminary Injunction.

Mason claims that he continues to be subjected to ongoing harassment, retaliation, and mail interference and that Defendants Heather Cecil and Internal Affairs Staff Joshua Young, as well as other staff at Lawrence Correctional Center, have collectively deprived him of his rights, deterring further protected speech. (Docs. 77, 79, 83). As a result, he does not feel safe at Lawrence.

---

[3] Mason was provided a Pro Se Civil Complaint for Civil Rights Violations or Other Civil Claims Filed by a person in Custody form, which included instructions on how state a claim. Specifically, the form states "[d]o not include legal arguments or citations." (Doc. 4).

Page 7 of 15

First, Mason claims that internal affairs staff have retaliated against him by placing him with cellmates who threaten his safety. Specifically, on January 17, 2021, "the administration/placement officer Jane and/or John Doe tried to place a homosexual in [his] cell…[who] refused to come to the cell." (Doc. 77, p. 2). Although, the inmate was ultimately not celled with Mason, a fight could have taken place by staff's intentional acts. (*Id.* at p. 3). On February 13, 2021, an unknown placement officer celled Mason with an inmate who had a high aggression level. (Doc. 83, p. 2). And as alleged in the Complaint, in 2019, he had previously been placed in a cell with an inmate who was under investigation and being retaliated against by Internal Affairs. (Doc. 10, p. 33; Doc. 77, p. 2). Mason claims that his cellmate placement history demonstrates a pattern of harassment and retaliation. (Doc. 77, p. 2).

Next, Mason alleges that in retaliation for exercising First Amendment protected speech his mail continues to be mishandled. (Doc. 77, p. 3). Since the Court issued the Order denying the first request for a preliminary injunction,[4] Mason claims that on September 8, 2020, he received a letter from the Circuit Court of Cook County notifying him that a 75 page complaint had not been received. (*Id.* at p. 5). On November 3, 2020, he sent a 105 page letter to his cousin via priority mail. (*Id.* at p. 4). The letter was returned to Mason on November 10, 2020, with instructions for Mason to specify if he wanted the letter sent certified mail only or certified mail with return receipt. The letter was resent on November 11, 2020, and he was charged $17.20. Mason claims he should have been charged around $8.70 for priority mail, which is a flat rate. He asserts that Defendant Cecil retaliated against him by intentionally delaying the letter for seven days and then denying him the ability to send the letter priority, forcing him to pay more to send the letter by certified mail. (*Id.* at p. 4-5).

---

[4] Mason also includes allegations of harassment and retaliation regarding the mishandling of a letter sent to the Cook County State's Attorney, a letter sent to the Mayor of Chicago, a check that was sent to Attorney Williams, and complaints sent to the Illinois State Police. These allegations were previously presented to the Court prior to ruling on the first motion for preliminary injunction. (*See* Docs. 8, 10-1, 22, 36, 46).

On January 18, 2021, he mailed a letter to Assistant Attorney General Jennifer Powell. (Doc. 79, p. 2). The letter was a discovery request for production of documents in this case. Mason was not given a copy of the Offender Authorization of Payment form back. He claims that Defendants Cecil and Young are no longer giving him copies of this form so that he cannot submit them as evidence demonstrating that his mail is being destroyed and delayed. (*Id.*). When he informed Cecil that he had not received copies of the Offender Authorization of Payment for mail sent on December 27, 2020, January 3, 2021, and January 18, 2021, she directed him to contact the business office for copies of receipts. (*Id.* at p. 3). He again did not receive a copy of the Offender Authorization of Payment for a petition sent to the Cook County Circuit Court on January 31, 2021. (*Id.*). As of February 3, 2021, when Mason went to speak with his counselor regarding the mishandling of his mail, the petition had not yet been sent by the mailroom. (*Id.* at p. 4).

On February 22, 2021, Mason received a copy of his Offender Authorization for Payment dated February 10, 2021. (Doc. 83, p. 2). This receipt confirmed the payment for postage to mail his Memorandum in Opposition filed with this Court on February 18, 2021. (*See* Doc. 81). Mason claims that Cecil stamped the receipt as being received February 19, 2021. He asserts that this shows delays in his mail, and it is impossible that Cecil received the privileged mail on February 19, 2021, when it had already been mailed and filed with the Court on February 18, 201. (Doc. 83, p. 3).

Around that same time, he also received a letter marked "privileged mail" from Uptown People's Law Center. (Doc. 83, p. 3). The letter contained documents that Mason had sent to Uptown People's Law Center, which were now being returned to him. The letter was missing documents. Mason claims Defendants opened the letter before he received it, which is why it was missing documents. (*Id.*). Because of the ongoing retaliation and harassment, Mason claims he does not feel safe being housed at Lawrence. (Doc. 83, p. 6).

In response to the Motion for Preliminary Injunction, Defendants have filed a Motion to

Page 9 of 15

Strike. (Doc. 78). Defendants contend that Mason raises many of the same allegations he raised in the first motion for preliminary injunction. They argue that his allegations are also vague and generalized without sufficient details as to dates or parties involved, making it difficult for Defendants to properly investigate and respond to the Motion. Finally, they point out that Mason does not actually request any specific relief in his motion, which also makes it impossible for them to adequately respond. Defendants ask the Court to strike the motion pursuant to Federal Rule of Civil Procedure 12(f).

Although the Motion for Preliminary Injunction currently before the Court reasserts allegations raised in the first motion for preliminary injunction, Mason has alleged new instances of retaliatory conduct that have occurred since the Court held an evidentiary hearing and denied the first motion on August 24, 2020. (Doc. 55). For these new claims of retaliation, Mason has provided dates and associated them with individuals, as summarized above. The Court does not find that Defendants have met the high burden of showing that the allegations "are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial" necessitating a strike. *Reed v. S. Ill. Univ.,* No. 18-cv-1968-GCS, 2020 WL 3077186 at *1 (S.D. Ill. June 10, 2020) (internal citations and quotations omitted). Accordingly, the Motion to Strike is denied, and the Court will consider the Motion for Preliminary Injunction.

"The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.,* 149 F.3d 722, 726 (7th Cir.1998). In order to obtain relief, Mason must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). Additionally, "a preliminary

injunction is appropriate only if it seeks relief of the same character sought in the underlying suit,

and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff*, No. 19-cv-00394,

2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-

cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018)). In other words, there must be a

"relationship between the injury claimed in the party's motion and the conduct asserted in the

complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir.

2015) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). *See also Hardy v. Rauner*,

17-cv-1354-NJR-DGW, 2018 WL 5914819, at *3 (S.D. Ill. Aug. 29, 2018).

First, the Court finds that Mason's claims regarding cellmate placement do not warrant a

preliminary injunction. These claims of new incidents of retaliation are alleged against unknown

placement officers who are not parties to this case. The Court does not have jurisdiction to enter

an injunction in such a situation, and a motion for a preliminary injunction is not a proper avenue

for Mason to add claims and individuals to this lawsuit.

Next, Mason has not demonstrated "any likelihood of success" on his First Amendment

claim of retaliation against mailroom and internal affairs staff. Following the hearing on the first

request for a preliminary injunction, Chief Judge Rosenstengel found that "[o]ther than

speculation, Mason has not presented any evidence indicating that Defendants' conduct was at

least in part motivated because he engaged in First Amendment activity." (Doc. 55, p. 7). Chief

Judge also held that "at this point it is not even clear that all the issues with the mail can be

attributed to Lawrence mailroom staff." (*Id.*). In the Motion currently before the Court, Mason

repeatedly states that the events described in the motion for preliminary injunction occurred in

retaliation against him for exercising his First Amendment rights. (*See* Doc. 77, pp. 2-5, 10-11;

Doc. 79, p. 1-2; Doc. 83, pp. 2, 4). Other than these conclusory statements, he has failed to provide

any factual details or evidence demonstrating that his mail has been delayed or destroyed, he was

overcharged in sending a letter to his cousin, he is not being provided receipts for postage paid,

and his civil complaint was prevented from successfully reaching a circuit court in retaliation for engaging in First Amendment Activity. And again, Mason has not clarified which specific First Amendment activity prompted the retaliation[5] or provided evidence or factual allegations to support his assumption that the issues with the mail can be attributed to Defendants' intentional conduct.

Likewise, Mason has not demonstrated a likelihood of success on his harassment claim. Currently, Mason is proceeding on Count 7 against Sergeant Reid for harassing him by tearing off the postdate sticker from his mail, writing him a false shakedown slip and disciplinary ticket, confiscating his property, and continually making sexual comments and gestures to him. (Doc. 14, p. 15). Count 7 is also proceeding against Brookhart, Jeffreys, Burle, Ulrich, Downer, and Livingston for failing to act when Mason brought Reid's unconstitutional conduct to their attention. In denying the first motion for preliminary injunction, Chief Judge found that "taking Masons' testimony as true, the unprofessional conduct [by Reid] described is not sufficient to constitute cruel and unusual punishment that rises to the level of an Eighth Amendment claim." (Doc. 55, p. 9). Here, the current Motion for Preliminary Injunction does not state any new factual allegations against Reid for harassment that have not already been considered by this Court.

As for the First Amendment claim against Cecil for repeatedly mishandling his incoming and outgoing mail, Mason has demonstrated a better than negligible chance of proving this claim. *Valencia v. City of Springfield, Ill.,* 883 F. 3d 959, 966 (7th Cir. 2018) (stating that a better than negligible chance of success is a low threshold). However, the Court does not find that traditional

---

[5] In denying the first motion for preliminary injunction, Chief Judge Rosenstengel noted that Mason presented conflicting statements regarding which First Amendment activity prompted the retaliation by Defendants. "In the Complaint, he claims that he was already having issues with his mail prior to sending the complaint letter to Director Jeffreys on July 7, 2019, which prompted the retaliation. At the hearing he testified that once he started complaining about issues at Lawrence that is when the retaliation began. He also testified, however, that he was retaliated against prior to his transfer to Lawrence and continued to be harassed and retaliated against once he arrived at Lawrence, and then he began writing grievances." (Doc. 55, p. 7). Here, Mason vaguely states that he is being retaliated against for exercising protected speech and attempting to "draw outside attention to oppressive and unconstitutional conditions" at Lawrence. (Doc. 77, p. 3-4).

legal remedies are ineffective and that Mason will suffer irreparable harm without an emergency

injunction. To the extent he is being overcharged for mailing letters and funds are incorrectly being

deducted from his account, he may seek money damages for reimbursement should he prevail in

the lawsuit. Regarding his allegations that letters he sends are being delayed or destroyed, with the

exclusion of the complaint sent to Cook County Circuit Court on July 14, 2020, all of the new

allegations regarding sent mail discussed in the Motion for Preliminary Injunction reached the

intended recipient.[6]  As Chief Judge Rosenstengel previously stated "[a]lthough it does appear that

Mason is repeatedly having problems with his mail, he is still sending and receiving mail" and

thus, Mason has not demonstrated he will suffer irreparable harm without interim relief. (Doc. 55,

p. 9-10).

Finally, Mason's claims that he is being denied access to the courts and obstructed from

pursuing post-conviction relief. He asserts that legal documents confiscated by Defendant Sergeant

Reid from his cell on July 22, 2019, have not been returned making it impossible for him to

properly investigate, seek assistance from attorneys, petition the courts, and prove his innocence.

Mason also alleges that because he has been prevented from sending mail by Defendants Cecil and

Young, he is unable to properly present constitutional violations to a reviewing court with attached

affidavits and exhibits so that he can demonstrate that he should be granted leave to file a

successive post-conviction petition with the Cook County Circuit Court. (Doc. 77, p. 10).

However, the Court dismissed the access to courts claim against Reid (Count 2) on January 29,

2020, because Mason did not explain "the connection between the confiscation of legal materials

and an inability to pursue a legitimate challenge" in the Complaint. (Doc. 14, p.13). The Court also

---

[6] Mason does not allege that Willie Townsell did not receive the 105 page document, only that it was delayed and he was overcharged. (Doc. 77, p. 4-5). He also does not claim that the Cook County Circuit Court did not receive the petition mailed on January 31, 2021, only that it too was delayed so that it could be read by Defendants. (Doc. 79, p. 3- 4). On February 17, 2021, Defendants filed a Motion for Extension of Time requesting additional time to respond to discovery sent on January 18, 2021, confirming that they received the discovery requests mailed by Mason, even though he did not receive a postage receipt. (Doc. 79, p. 4, Doc. 80). The Court also received his Memorandum In Opposition (Doc. 81) even though it was allegedly delayed and incorrectly dated by Defendant Cecil. (Doc. 83, p. 3).

dismissed Mason's access to courts claim against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle (Count 1) for mishandling his mail because he had not sufficiently plead that the alleged conduct "hindered his ability to pursue a legal claim or defense." (Doc. 14, p. 11). Because Mason's claims that the mishandling of his mail resulted in a denial of access to the courts were not sufficiently plead and previously dismissed, it is impossible for him to now prove that he is likely to succeed on the merits of these claims. As stated, Mason cannot cure the deficiencies in his Complaint by adding allegations in a motion for preliminary injunction.

Mason's First Amendment access to courts claim was allowed, however, to proceed to the extent he alleged that correspondence with his attorneys were read on multiple occasions outside his presence. (Doc. 14, p. 12). In the Motion, Mason states a letter from a law firm was again opened and read prior to delivery. He received a letter from the law firm Uptown People's Law Center, marked privileged mail, on February 22, 2021 with the seal broken and missing documents. (Doc. 83, p. 4). But Mason has not included sufficient allegations for the Court to determine that the mail received from Uptown People's Law Firm was in fact privileged or explained how the opening of this letter or any previous letters impeded his ability to file or litigate a case. *See Kaufman v. McCaughtry*, 419 F. 3d 678, 686 (7th Cir. 2005) (affirming summary judgment when a plaintiff failed to show that the mail at issue was privileged). Thus, he has not demonstrated "any likelihood of success" on his First Amendment claim for denial of access to courts against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle.

Because Mason has not made the clear showing necessary to warranted emergency injunction relief, the Motion for Preliminary Injunction is denied.

### DISPOSITION

For the reason provided above, the Motions for Leave to Submit New Evidence (Docs. 79, 83) filed by Plaintiff Mason are **GRANTED**. The following motions filed by Plaintiff Mason are **DENIED**: the Motion for Leave to Appoint Counsel (Doc. 73), the Motion for Leave to File

Page 14 of 15

Amended Complaint (Doc. 74), and the Motion for Preliminary Injunction (Doc. 77).

The Motion to Strike (Doc. 78) filed by Defendants is **DENIED.**

**IT IS SO ORDERED.**

**DATED:   April 9, 2021**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**