IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICKEY MASON,
#R04326,

        Plaintiff,

v.

HEATHER CECIL, *et al.*,

        Defendants.

Case No. 19-cv-01375-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Pending before the Court is a Motion for Summary Judgment filed by Defendants Allen, Brookhart, Burle, Cecil, Downen, Fitch, Goins, Jeffreys, Livingston, Loy, Piper, A. Pucket, N. Pucket, Reid, Ulrich, Waltz, Weaver, and Young. (Doc. 100). Plaintiff has filed a response in opposition. (Doc. 103). Now that this matter has been fully briefed, and for the reasons set forth below, the Court grants the motion for summary judgment.

### BACKGROUND

    Plaintiff Mason, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Hill Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging the deprivation of his constitutional rights that occurred at Lawrence Correctional Center ("Lawrence"). (Doc. 10). In the Complaint, Plaintiff claims that the mailroom staff, internal affairs staff, and the mailroom supervisor, Heather Cecil, have repeatedly opened his legal oriented mail without him being present, delayed mail, and destroyed outgoing mail. (Doc. 10, pp. 17-18, 22; Doc. 1, p. 11; Doc. 10-1, pp. 6, 19). Plaintiff also asserts that he has been subjected to various forms of retaliation and harassment by staff members at Lawrence.

Page 1 of 14

Following a preliminary review of the Complaint, under 28 U.S.C. § 1915A, and the subsequent dismissal of the John Doe Defendants, Plaintiff is proceeding on the following four claims:

**Count 1:**   First Amendment access to courts claim against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle for the mishandling Plaintiff's legal mail.

**Count 7:**   Eighth Amendment claim of cruel and unusual punishment against Reid, Brookhart, Jeffreys, Goins, Burle, Ulrich, Downen, and Livingston for ongoing harassment against Plaintiff.

**Count 13:**   First Amendment claim of retaliation against Brookhart, Goins, Cecil, Reid, Nicholas Puckett, Weaver, Adam Puckett, Piper, Young, Fitch, Allen, Ulrich, Loy, Livingston, Waltz, Downen, Burle, and Jeffreys.

**Count 15:**   First Amendment free speech claim against Cecil for repeatedly mishandling Plaintiff's incoming and outgoing mail.

(Docs. 14, 71).

Along with the Complaint, Plaintiff filed a motion for a temporary restraining order and a preliminary injunction. (Doc. 7). Plaintiff asserted that he continued to be harassed, threatened, and retaliated against by staff. He argued that he would suffer irreparable harm because mail interference will hinder his legal proceedings, and he feared for his life. The Court denied the request for a temporary restraining order and the request for a preliminary injunction to the extent Plaintiff sought relief based on allegations of interference with legal mail and denial of access to the courts. The Court, however, set a hearing on Plaintiff's request for a preliminary injunction regarding his claims of ongoing harassment and retaliation. (Doc. 14, p. 20-21).

Following the hearing, the Court denied Plaintiff's request preliminary injunction finding that Plaintiff had not demonstrated a likelihood of success on the merits reading his claims against all the defendants, except Defendant Reid. (Doc. 101). However, the motion was still denied as to

the First Amendment claim retaliation claim against Reid, as Plaintiff could not demonstrate that he would suffer irreparable harm and that his traditional legal remedies were inadequate.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc*., 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc*., 756 F.3d 542, 544 (7th Cir. 2014).

### ANALYSIS

### *I. Count 1 Denial of Access to Courts*

The Court must first address the scope of Count 1, as the parties put forth arguments for why certain mail that was allegedly opened by staff does or does not qualify as privileged mail according to administrative regulations. (*See* Doc. 101, p. 6; Doc. 103, p. 5-6). Plaintiff also asserts

Page 3 of 14

that due to the mishandling of his legal mail he was prevented from collecting evidence and legal documents and obtaining a private investigator, which "could have lead [sic] to new evidence and a petition filed with the court" in relation to his criminal case. (Doc. 103, p. 6, 12).

In the Merit Review Order, the Court specified that Plaintiff was allowed to proceed on Count 1 against Heather Cecil *only* to the extent that he alleged that correspondence with his attorneys were open and read on multiple occasions outside his presence. (Doc. 14, p. 12, 20).[1] Count 1 is also proceeding against Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle who reviewed Plaintiff's frequent grievances regarding the opening of his legal mail from his attorney and failed to address the constitutional violation. (*Id.*). The Court ruled that Plaintiff had not properly pled how the opening and mishandling of the other mail he characterized as "legal mail" or "privileged" hindered his ability to pursue legal claims. Plaintiff was given an opportunity to amend the Complaint to correct these deficiencies, and he missed the deadline. (Doc. 71, 84, 106). Therefore, the issue before the Court is limited to whether there is sufficient evidence to demonstrate a genuine issue of fact regarding whether Plaintiff's First Amendment right to access the courts was hindered by the opening of mail sent to him by an attorney.

As the Seventh Circuit has stated, "[i]nmates have a First Amendment right both to send and receive mail, but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband." *Kaufman v. McCaughtry,* 419 F. 3d 678, 685 (7th Cir. 2005) (internal citations omitted). Because of the potential for interference with the right to access the

---

[1] In denying Plaintiff's first request for a preliminary injunction concerning his claim for interference with his legal mail and denial of access to the courts, the Court stated, "the Court is allowing Mason's claim regarding the repeated opening of mail from his attorneys to proceed past threshold…". (Doc. 14, p. 20). Furthermore, in denying Plaintiff's second request for a preliminary injunction concerning his claims that he was being denied access to the courts, the Court again iterated, "[t]he Court also dismissed Mason's access to courts claim against Cecil, Jeffreys, Brookhart, Goins, Loy, Livingston, and Burle (Count 1) for mishandling his mail because he had not sufficiently plead that he alleged conduct 'hindered his ability to pursue a legal claim or defense'… Mason's First Amendment access to courts claim was allowed, however, to proceed to the extent he alleged that correspondence with his attorneys were read on multiple occasions outside his presence." (Doc. 84, p. 13-14).

courts, an inmate's legal mail "is entitled to greater protections." *Id.* (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)). The term "legal mail" does not encompass everything an inmate sends and receives related to a lawsuit or even every piece of mail deemed "legal" or "privileged" pursuant to the Illinois Administrative Code.[2] For the purpose of a constitutional violation, legal mail refers to mail that is a "correspondence with an attorney." *Harrison v. Cty. of Cook. Ill.*, 364 F. App'x 250, 252 (7th Cir. 2010). When a "prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman v. McCaughtry*, 419 F. 3d 678, 686 (7th Cir. 2005). Even when prison officials have improperly opened or interfered with legal mail, however, a plaintiff must still demonstrate some hindrance to his ability to prosecute a meritorious legal claim in order to maintain a claim for denial of access to the courts. No constitutional claim is stated unless the element of prejudice is met. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-806 (7th Cir. 2010).

In the Complaint, Plaintiff asserts that on five separate occasions he received mail from his attorney that had been opened outside his presence. He alleges that on July 2, 2019, he received a letter marked "Confidential Legal Mail" from the Office of the State Appellate Defender that appeared to be steamed opened and read by mailroom and internal affairs staff. (Doc. 8, p. 2; Doc. 10, p. 21). Later that month, Plaintiff then received "clearly marked legal mail from Attorney Brenda G. Baum dated 7/26/2019 that was opened without being in my presences by mailroom supervisor Heather Cecil, mailroom staff and/or Internal affairs staff." (Doc. 10, p. 25). Another letter from Attorney Baum that was clearly marked legal mail was delivered to Plaintiff on August

---

[2] The law does not distinguish between privileged mail and non-privileged mail; privileged mail is a creation of Illinois Department of Corrections regulation. *See Jenkins v. Huntley*, 235 Fed.Appx. 374, 376 (7th Cir. 2007). Prisoners have no constitutional right to see that the Illinois Department of Corrections regulations are enforced.

2, 2019, and had been "steamed opened" and read without Plaintiff being present. (*Id.* at p. 27, 32). On October 6, 2019, Plaintiff received documents from Attorney Baum "that [were] in another envelope that was opened, read, and intentionally delayed by mailroom supervisor Heather Cecil, mailroom staff, and /or internal affairs staff." (Doc. 10-1, p. 15-16; Doc. 7-3, p. 35-36). The envelope was marked with a note written by staff "envelope missing/damaged by USPS." (*Id.*). Lastly, Plaintiff claims that on December 22, 2019, he received a letter marked legal mail from Attorney Baum that "appeared to be steamed opened and read before he received it by mailroom staff and/or internal affairs staff." (Doc. 10-1, p. 27). Plaintiff testified that he knew the letters had been steamed open and read prior to delivery because the envelopes were not sealed properly, and they were "real sticky, meaning some heat been put to it." (Doc. 101-2, p. 47, 57). He stated that he did not know how staff was applying heat to the envelopes in order to open them, but he guessed that "they probably got a machine." (*Id.* at p. 57).

      The Court finds that Defendants are entitled to summary judgment as to Count 1. Even assuming that Plaintiff's legal mail was opened prior to his receipt, "there is no evidence that such actions hindered his efforts to pursue a legal claim or defense." *Daniel v. Cook Cty.,* No. 12 C 9049, 2015 WL 5332346, at *8 (N.D. Ill. Sept. 14, 2015). *See also Mason v. Gimber*, No. 17-cv-01025-GCS, 2020 WL 3268654, at * 9 (S.D. Ill. June 17, 2020) ("the establishment of a pattern and practice, however, does not absolve a plaintiff from showing actual injury"). According to court records, Attorney Brenda Baum was recruited to represent Plaintiff in *Mason v. Spiller,* No. 17-cv-00867-NJR, litigated in this district before Chief Judge Rosenstengel. In that case, the parties notified the court that a settlement had been reached, and judgment was entered on June 4, 2020. (*Spiller,* at Doc. 123, 124, 136). Plaintiff testified that he was not aware that the opening of his legal mail from Attorney Baum impacted the litigation, and neither were any claims dismissed

in that lawsuit due to the mishandling of mail by Cecil. (Doc. 101-2, p. 72, 81). As for the letter from his appellate state defender received on July 2, 2019, Plaintiff testified that he could not remember how the reading of this letter outside his presence affected his litigation. (Doc. 101-2, p. 80, 81). As Plaintiff has not provided any evidence that Defendants' conduct in handling letters from his attorneys disadvantaged and prejudiced the pursuit of any of his legal claims, summary judgment is granted as to Count 1.

## *II. Count 7 Cruel and Unusual Punishment*

In the Complaint, Plaintiff claimed that Sergeant Reid harassed him by tearing off the post-date sticker from his mail, shaking down his cell, issuing a false disciplinary ticket, confiscating his property, and continually making sexual comments and gestures to him. He further asserted that he brought Reid's conduct to the attention of Brookhart, Jeffreys, Goins, Burle, Ulrich, Downer, and Livingston, and they failed to act.

In the motion for summary judgment, Defendants assert that none of the alleged conduct on the part of Reid, taken separately or together, is sufficient to state a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 101, p. 9). Plaintiff does not dispute this assertion and concedes that his allegations do not rise to the level of an Eighth Amendment violation. (Doc. 103, p. 7). Accordingly, summary judgment is granted in favor of Defendants as to Count 7.

## *III. Count 13 First Amendment Retaliation*

In order to prevail on a claim of retaliation, a plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations

omitted). A plaintiff may demonstrate retaliation by utilizing circumstantial evidence. *See Kidwell v. Eisenhauer*, 679 F. 3d 957, 965-66 (7th Cir. 2012) (stating that a plaintiff may show retaliation by use of circumstantial evidence). Circumstantial evidence can "include suspicious timing, ambiguous statements, behavior, or comments." *Manuel v. Nally*, 966 F.3d 678, 680 (7th Cir. 2020) (quoting *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)). But suspicious timing alone does not evidence retaliation. *Manuel*, 966 F.3d at 681.

Defendants argue that Plaintiff cannot show a nexus between any alleged retaliation and the exercise of his right to free speech or that any such alleged retaliation had a deterrent effect. (Doc. 101, p. 10). In response, Plaintiff asserts that he is not required to set out every single instance in which Defendants retaliated against him and that he has alleged sufficient facts to put each Defendant on notice "that they are parties to this action." (Doc. 103, p. 7). He states that the "ongoing misconduct of harassment and delays in receiving mail… could be considered retaliation because of grievances [he] had filed against Defendant Cecil." (*Id.* at p. 6). In his deposition, Plaintiff pointed to the affidavits of other inmates detailing similar experiences to support his retaliation claim. (Doc. 101-2, p. 125).

The Court finds that no reasonable juror could infer that Plaintiff's protective speech was the motivating factor in Defendants' conduct.[3] Plaintiff testified that he was retaliated against by Defendants for sending a letter to Director Jeffreys regarding issues he was having with his mail at Lawrence and for filing grievances. (Doc. 101-2, p. 120, 132). Regarding the letter to Director Jeffreys, Plaintiff has not presented any evidence that the Defendants were even aware that he sent

---

[3] Plaintiff asserts: (1) Defendant Cecil mishandled his mail; (2) Defendants Weaver, Adam Puckett, Piper, and Young were members of the internal affairs unit and did not place him in protective custody; (3) Nicholas Puckett falsely stated Plaintiff pled guilty to the disciplinary ticket; (4) Correctional Officers Fitch and Allen prevented Plaintiff from freely communicating with his attorney; (5) Correctional Officer Reid harassed him by tearing off the post-date sticker from his mail, shaking down his cell, issuing a false disciplinary ticket, confiscating his property, and continually making sexual comments and gestures to him; and (6) Defendants Jeffreys, Brookhart, Goins, Loy, Livingston, Burle, Downen, Ulrich, and Waltz denied various grievances about retaliation and harassment by staff.

this letter. He testified that no one ever mentioned the letter to him, but he knew Defendants were aware that he notified Director Jeffreys that his mail was being mishandled because "the whole facility is full of family and friends. They all stick up for each other." (*Id.* at p. 124, 132-133). According to his own assertions, however, Plaintiff believed his mail was being improperly opened even before he sent the letter to Director Jeffreys. (*See* Doc. 10, p. 18, 21; Doc. 8, p. 2).

As for his grievances, Plaintiff has not identified any specific grievances that triggered the alleged retaliation by each Defendant, and when asked, he could not describe any grievance that led to Defendants' conduct. (Doc. 101-2, p. 120; Doc. 103, p. 6). He testified that its "common sense" that people do not like to be "told on that they are not doing their job." (*Id.* at p. 134). Furthermore, none of the affidavits written by other inmates speak to Plaintiff's contention that Defendants had a retaliatory motive towards *him*. (*See* Doc. 103, 14-24).

Other than his suspicions, Plaintiff does not point to anything in the record supporting his claim for retaliation. *See Manuel v. Nalley,* 966 F. 3d 678, 681 (7th Cir. 2020) ("a suspicion is not enough to get past a motion for summary judgment") (internal quotations and citations omitted). "Nor can an inference of knowledge or retaliation be drawn from the circumstances," as presented in this case. *Healy v. City of Chi.,* 450 F. 3d 732, 740-41 (7th Cir. 2006). Because Plaintiff has failed to show that Defendants were motivated by his First Amendment activity, Defendants are entitled to summary judgment on this count.

### IV. Count 15 Free Speech

The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). A valid First Amendment claim regarding interference in communications requires "a continuing pattern

or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir. 2002) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment.") (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829 F.2d 608, 610 (7th Cir. 1987)).

Plaintiff contends that the Complaint and exhibits show several situations in which Cecil refused to send his mail or delayed his mail. (Doc. 103, p. 8). He points to a situation in which he tried to mail a letter to the Illinois State Police. On August 18, 2019, he placed the letter to the Illinois State Police in a sealed envelope and marked the letter privileged mail. (Doc. 10-1, p. 7, 9). Plaintiff asserts that Cecil refused to send the privileged mail, and the next day, the letter had been returned to him opened and read, along with a form that stated, "Everything except legal/privileged mail must be UNSEALED" and "must be to specific person/office." (Doc. 10-1, p. 7; Doc. 1-1, p. 37). Plaintiff was also prevented from mailing legal documents to a private investigator. (Doc. 10-1, p. 10; Doc. 1-1, p. 44). He received a notice stating that "Everything except legal/privileged mail must be UNSEALED" and "LCCP is not a law firm/attorney. It's a process server." (*Id.*). When he tried to mail documents again to the private investigator, Cecil refused to mail the legal documents, and he received a notice stating, "can't use legal envelopes for non-legal mail." (Doc. 1-1, p. 50). Likewise, Plaintiff's letter to NAACP Legal Defense was returned to him with the instructions that the letter must be unsealed, and the letter must be addressed to a specific attorney. (Doc. 1, p. 52). His letter to Mayor Lighfoot that he attempted to mail on January 22, 2020, was also returned to him with the note that the envelope should be unsealed, extra postage was required, and that letters to mayors are not legal or privileged. (Doc. 38, p. 12). Finally, Plaintiff never received pictures of his daughter sent by his family through the website Freeprints.com. (Doc. 10-1, p. 12-14; Doc. 101-2, p. 135).

An affidavit from fellow inmate William Smith states that Smith witnessed the return of the letter to the Illinois State Police to Plaintiff, as well as a letter to the NAACP and to Mayor Lightfoot without being sent. (Doc. 103, p. 24). Smith also witnessed mail, pictures, and cards not being mailed to Plaintiff's family. (*Id.*).

Plaintiff also provides several situations in which he claims his mail was intentionally delayed. In his deposition, Plaintiff testified that legal mail should take only 3 or 4 days for it to be delivered to him because "legal mail is priority" and some of the letters he received from attorneys were marked "one-day or two-day shipping." (Doc. 101-2, p. 48, 49). However, he was receiving mail seven or eight days from the postmark date indicated on the envelope. (*Id.* at p. 49). Plaintiff asserts that it took: (1) 12 days to receive a letter from his state appellate defender postdated June 21, 2019; (2) 3 days to receive a letter from Attorney Baum postdated July 30, 2019; (3) 5 days to receive letter from the Montroy Law Offices; and (4) 9 days to receive another letter from Attorney Baum dated September 27, 2019. On October 29, 2019, he sent a letter to another attorney, Arielle Williams, and he received the letter back months later in August 2020 with a sticker that states "return to sender, attempted, not known, unable to forward." (Doc. 99, p. 32). Finally, Plaintiff claims that Cecil delayed a letter for Attorney Baum by 9 days. On December 1, 2019, he gave to a sergeant the letter addressed to Attorney Baum and the offender authorization for payment form, and later when the form was returned to him, written on the back of the authorization for payment form was the note "received December 10, 2019." (Doc. 10-1, p. 26).

The Court will grant summary judgment as to Cecil, as Plaintiff has failed to provide evidence from which a jury could infer that delays in receiving or sending mail are attributable to her.[4] Liability under Section 1983 is predicated on a defendant's personal involvement in the

---

[4] Defendant Heather Cecil is sued in her individual capacity. (Doc. 10, p.10, p. 2).

alleged constitutional violation. *Palmer v. Marion Cty.,* 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Plaintiff testified that he believed it was Cecil who was mishandling his mail because he was told by staff and the warden that she was the only one in the mailroom. (Doc. 101-2, p. 144). But he also stated that he did not know if she was the only individual working in the mailroom during the entire time frame alleged in the Complaint. (*Id.* at p. 144). Plaintiff then testified that even if someone else mishandled his mail, Cecil, as supervisor, is responsible for staff being properly trained and doing their job correctly. (*Id.* at p. 145-146).

Plaintiff's testimony that he "believed" Cecil to be the one who mishandled his mail is simply insufficient to find create a genuine issue of fact regarding whether she is personally responsible and engaged in any specific action to repeatedly interfere with Plaintiff's mail. Plaintiff has not identified who informed him Cecil was the only person working in the mailroom, nor has he pointed to evidence in the record to support this contention. *See United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010) ("At summary judgment, unfortunately for [the plaintiff], saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact"). Additionally, Plaintiff is mistaken that Cecil can be held liable solely because she held a supervisory position, as the doctrine of *respondeat superior* is not applicable to Section 1983 actions. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

The Court further notes that there is no evidence to support Plaintiff's contention that there was in fact a pattern or practice of mishandling the mail. Many of the situations described by

Plaintiff appear to be a misunderstanding of mail procedures. Under the Illinois Administrative Code, outgoing mail that is "clearly marked as privileged and addressed to a privileged party may not be opened for inspection." 20 ILL. ADMIN. CODE § 525.130(c). All other outgoing mail, "shall be unsealed when collected or placed in housing unit mailboxes. Sealed mail that is not privileged will be opened and returned to the sender." 20 ILL. ADMIN. CODE § 525.130(e). The Illinois State Police, private investigators, mayors, and organizations are not considered privileged parties under the Illinois Administrative Code, nor did the letters meet the Code's definition of "legal mail." *See* 20 ILL. ADMIN. CODE § 525.110(g)-(h). Thus, Plaintiff should have placed those letters in unsealed envelopes if he wanted them promptly mailed.

Likewise, Plaintiff calculated the delivery times based on the postmark date printed on the envelope, which indicates the "date the Postal Service accepted custody of a mailpiece," not the date that Lawrence received the mail. UNITED STATES POSTAL SERVICE, *Handbook PO-408 - Area Mail Processing Guidelines, 1-1.3 Postmarks,* https://about.usps.com/handbooks/po408/ch1_003.htm (last visited March 18, 2023). In his response, he acknowledges that he does not have any evidence that the United States Postal Service treats legal mail differently than non-legal mail. (Doc. 103, p. 8). Thus, the record does not support the contention that a majority of the delays Plaintiff experienced in receiving his mail was in fact attributed to staff at Lawrence and not the United States Postal Service.

Because Plaintiff has failed to present evidence that Cecil had a practice and pattern of mishandling Plaintiff's mail, summary judgment is granted as to Count 15.

### V. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity, but because the Court grants summary judgment on the merits it need not address the qualified immunity arguments.

DISPOSITION

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants Allen, Brookhart, Burle, Cecil, Downen, Fitch, Goins, Jeffreys, Livingston, Loy, Piper, A. Pucket, N. Pucket, Reid, Ulrich, Waltz, Weaver, and Young. (Doc. 100).

Accordingly, this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff Mason and to close this case.

**IT IS SO ORDERED.**

DATED:   March 20, 2023

　　　　　　　　　　　　　　　　　　　　　　　　 s/Stephen P. McGlynn
**STEPHEN P. MCGLYNN**
**United States District Judge**